SUPERIOR COURT FOR THE STATE OF WASHINGTON
SNOHOMISH COUNTY

| | |
|---|---|
| MARIA GUTIERREZ,<br><br>Plaintiff;<br><br>v.<br><br>CITY OF ARLINGTON; MICHAEL KNIGHT; JOSHUA FOX; and<br>JOHN DOE 1-10 inclusive;<br><br>Defendants. | CAUSE NUMBER: 21-2-05386-31<br><br>AMENDED COMPLAINT FOR DAMAGES AND FOR INJUNCTIVE RELIEF<br><br>JURY DEMANDED |

**I. PARTIES**

1.1   Maria Gutierrez is a resident of the City of Arlington in Snohomish County, Washington.

1.2   The City of Arlington is a local governmental entity responsible for the tortious conduct of the Arlington Police Department.

1.3   The City of Arlington's Police Department is overseen by a police chief who is appointed by the mayor and subject to confirmation by the Arlington City Council.

1.4   Michael Knight is a former Police Officer with Arlington Police Department, and was personally involved in the police contact with Plaintiff on September 30, 2019.

1.5   Joshua Fox is a former Police Officer with Arlington Police Department and was involved in the police contact with Plaintiff on September 30, 2019.

1.6   John Does 1-10 are other individual persons affiliated with the Arlington Police Department, or its supporting agencies (such as 911 dispatch), whose names are unknown to Plaintiff at this time.

## II. JURISDICTION AND VENUE

2.1   This claim arises out of allegations of tortious conduct that violated the civil rights of Ms. Gutierrez.

2.2   The incident happened in the city of Arlington in Snohomish County, Washington.

2.3.   The Snohomish County Superior Court has Jurisdiction over the parties.

2.4   Venue is proper in Snohomish County Superior Court.

## III. FACTS

3.1   Plaintiff incorporates each of the above allegations.

3.2   On or about September 30, 2019, Maria Gutierrez was delivering newspapers in the City of Arlington.

3.3   As was her custom, and required by her job, Maria was delivering the newspapers in the early morning hours of September 30, 2019, well before dawn.

3.4   Around four in the morning on September 30, 2019, Maria was driving her regular route.

3.5   She drove in a business' parking lot at the intersection of 3rd Street and West Avenue and delivered papers to their front door.

3.6   Maria exited the parking lot onto West Avenue heading north and saw a police

1  vehicle parked in the opposite direction of the road; its lights were off.

2  3.7    Maria continued on, signaled, and entered the turn lane to turn left onto W.
3  Fourth Street.

4  3.8    At that moment, Maria noticed the police vehicle whip a U-turn, and that its
5  lights were still off.

6  3.9    As Maria came to a stop at the intersection of West Fourth Street, she noticed
7  that the police vehicle behind her was still driving without its lights on.

8  3.10   Maria then began her left turn.

9  3.11   Just then, the vehicle behind her turned on its lights, including overhead red
10 and blue lights.

11 3.12   At first, Maria thought the police were on their way to a call, but after a few
12 moments, realized she was being directed to pull over; Maria did not immediately see
13 a safe place to do so.

14 3.13   She slowly crossed Highway 9 and then pulled over at the side of North Street,
15 at the Arlington Park and Ride.

16 3.14   Putting her car in park, Maria immediately turned on both overhead lights in
17 her car, illuminating the passenger compartment.

18 3.15   Officer Michael Knight parked at an angle behind Maria's car and began to yell
19 at her to get out of the car.

20 3.16   From Officer Knight's angle, he had a good view of Maria and newspapers
21 stacked in her car and on her dashboard.

22 3.17   Maria held a newspaper out the window and said, "I'm just delivering
23 newspapers."

3.18   Officer Knight yelled back, "I don't care what you are doing, get out of the car."

3.19   Maria exited her vehicle, and followed the directions of the police.

3.20   The police told Maria to face away from them with her hands up; she complied.

3.21   The police officer told Maria to walk backwards to them; she complied.

3.22   The police officer told Maria to get on her knees; she complied.

3.23   While walking backwards, Maria could sense another police vehicle and officer had arrived and believed that she was being held at gun point.

3.24   The police told Maria to put her left arm behind her back; she complied.

3.25   The police told Maria to put her right arm behind her back; she complied.

3.26   The police officer thought to be Michael Knight began to pull on Maria's arms, and she yelled, "My arm isn't going back that far."

3.27   Officer Knight replied, "You have to put your arm behind your back."

3.28   While the police were pulling on her hands and arms, Maria again yelled, "It can't go back that far," to which the police officer thought to be Officer Knight replied, "it's going to have to."

3.39   The police officer continued to pull on Maria's arm as she yelled, "Ow that hurts, ow that hurts."

3.30   The other police officer, Officer Joshua Fox, told her "You just need to shut – be quiet."

3.31   The police officers then repeatedly asked, "Who else is in the car?"

3.32   In pain and terrified, Maria kept telling them, "Nobody it's just me."

3.33   Officer Knight came around to Maria's front and asked her "What were you doing over there?"

3.34   Maria said, "I'm doing my job, I'm delivering newspapers."

3.35   Officer Fox then went to Maria's car and looked in, presumably seeing the car was still more than half full of undelivered newspapers, said everything was "clear."

3.36   Officer Knight then said, "Well, then let's get these handcuffs off you."

3.37   The police explained to Maria that they had stopped her because a 911 phone call said that two suspects were trying to break into Mission Motors.

3.38   Maria told the police that she had been delivering newspapers locally since 2006, and that she was surprised they didn't just walk up to her car when they pulled her over.

3.39   Officer Knight told Maria, "Well, I don't know you… do you know how many officers get shot just walking up to vehicles?"

3.40   Maria was still in shock from the experience, but asked why they didn't just block off the area or run her plates then?

3.41   Officer Fox told Maria, "We don't always have time to run plates."

3.42   During the entire contact while un-handcuffed, Maria held her shoulder that was causing her pain.

3.43   Once she was allowed to leave, still in shock and pain, Maria briefly let go of her shoulder to hug the police officer who let her go.

3.44   Maria is a first-generation citizen and was raised to not get in trouble and to respect police officers; she was in shock that she was hurting so badly and had not done anything wrong.

3.45   As Maria drove away and the shock began to wear off, her shoulder pain

1  became more pronounced; she finished her route and drove herself to the hospital.

2  3.46    Subsequent medical care would confirm a traumatic complete tear of her right
3  rotator cuff caused by the police pulling on her arm.

4  3.47    Maria complained to the police department later about the excessive use of
5  force and her injuries, but her complaints resulted in no action or documentation by
6  the Defendants.

7  3.48    Maria hired a lawyer and filed a tort-claim form with the City of Arlington, but
8  the City still did try to resolve her concerns; this suit followed.

### IV. CLAIMS FOR NEGLIGENCE

10  4.1    Plaintiff incorporates each of the above allegations.

11  4.2    As a direct and proximate cause of the acts of defendants, and each of them,
12  Maria was hurt and injured in her health, strength, and activity, sustaining injury to
13  her nervous system and person, all of which injuries have caused, and continue to
14  cause, Maria great mental, physical, emotional, and nervous pain and suffering.
15  Maria is informed and on this information and belief alleges that these injuries will
16  result in permanent disability to her. As a result of these injuries, she has suffered
17  general damages.

18  4.3    As a further direct and proximate cause of the acts of the defendants, and each
19  of them, plaintiff has incurred, and may continue to incur, medical and related
20  expenses. Plaintiff does not know at this time the exact amount of expenses that have
21  been incurred and that will be incurred in the future.

22  4.4    As a further direct and proximate case of the acts of the defendants, and each
23  of them, plaintiff's earning capacity has been and will be impaired, both in the past

and present in an amount according to proof.

4.5     Plaintiff has filed a tort claim form with the proper authorities for the City of Arlington, and has waited the requisite statutory number of days to allow Arlington to investigate and/or decide to mediate prior to filing this lawsuit; the City of Arlington has not offered to mediate and thus Plaintiff files suit.

## V.  CLAIMS FOR VIOLATIONS OF CIVIL RIGHTS: FALSE ARREST AND EXCESSIVE FORCE

5.1     Plaintiff incorporates each of the above allegations.

5.2     Plaintiff seeks relief for the violation of her rights secured by 42 USC §1983, §1988, the Fourth and Fourteenth Amendments to the United States Constitution.

5.3.    At all times relevant to this complaint, Defendants Knight and Fox, as Arlington Police Department police officers, were acting under the direction and control of the defendants City of Arlington.

5.4     Acting under color of law and pursuant to official policy and custom, defendant City of Arlington knowingly, recklessly, or with deliberate indifference and callous disregard of Plaintiff's rights, failed to instruct, supervise, train, control, and/or discipline on a continuing basis Defendants Knight and Fox and other Arlington Police Department members in their duty to refrain from unlawfully and maliciously arresting and using excessive force upon citizens.

5.5     Acting under color of law and pursuant to official policy and custom, Defendant City of Arlington knowingly, recklessly, or with deliberate indifference and callous disregard of plaintiff's rights, has failed to maintain a citizen complaint process and in fact has discouraged citizen complaints about the conduct of its

officers.

5.6     Defendant City of Arlington had the power to prevent the unlawful acts of its police officers, and could have done so by reasonable diligence, but failed to do so with deliberate indifference and callous disregard of the rights of Plaintiff and of other citizens.

5.7     Defendant City of Arlington, directly and indirectly, approved and/or ratified the unlawful, deliberate, malicious, reckless, and wanton conduct of defendants Knight and Fox, as described above.

5.8     Defendants' actions taken under color of state law deprived plaintiff of her constitutional right to be free from unlawful seizure as guaranteed by the Fourth Amendment to the United States Constitution.

5.9     Defendants' actions taken under color of state law deprived plaintiff of her constitutional right to be free from excessive force as guaranteed by the United States Constitution.

5.9     Defendants' actions have deprived plaintiff of his rights, privileges or immunities secured by the U. S. Constitution in violation of 42 U.S.C. '1983.

5.10    As a direct and proximate cause of defendants' violation of plaintiff's rights, plaintiff has suffered economic and emotional damages in amounts to be proven at trial.

5.11    Defendants' malicious and reckless disregard for plaintiff's clearly established constitutional rights, warrants an award of punitive damages.

## VI.  CLAIMS FOR ASSAULT, BATTERY AND OUTRAGE:

6.1     Plaintiff incorporates each of the above allegations.

6.2     Defendant Knight intentionally and maliciously assaulted and battered the plaintiff.

6.3     Defendant Knight's actions were unjustified and unprovoked.

6.4     Defendant City of Arlington is legally responsible for the conduct of Defendant Knight as alleged herein.

6.5     As a direct and proximate result of the Defendants' unlawful conduct, Plaintiff has suffered and will continue to suffer physical, emotional, and economic damages in amounts to be proven at trial.

6.6     The Defendants' conduct was so outrageous in nature and so extreme in degree as to be regarded as atrocious and utterly intolerable in a civilized community, and all of defendants' actions were taken in an intentional or reckless manner.

6.7     The Defendants' actions, failures to act, and misconduct constitute a continuing violation of plaintiff's rights.

6.8     As a direct and proximate result of defendants' outrageous conduct, plaintiff has suffered and will continue to suffer physical, emotional, and economic damages in amounts to be proven at trial.

### VII.  VIOLATION OF THE PUBLIC RECORDS ACT

7.1     On May 25, 2021, a public records request was submitted to the Arlington Police Department seeking "All records pertaining to incident 2019-00021784," which is the incident described above in this complaint (hereinafter, "the public records request" pursuant to the Public Records Act "PRA").

7.2     In response to the public records request, a one page incident report was

1  provided (that states it is page 1 of 2), along with a seven line "CAD Narrative" (that

2  states it is page 2 of 2).

3  7.3   The incident as described by Maria is generally known as a "felony stop."

4  7.4   Arlington Police Department has a written policy for officers to document felony

5  stops, particularly when guns are drawn, as this is a "use of force" scenario; however,

6  this written policy is not enforced as part of the culture of Arlington Police Department.

7  7.5   Either additional records exist about this police encounter, or additional

8  records should have been generated given the nature of the police encounter.

9  7.6   Inquiry about the completeness of the public records requests to the City of

10 Arlington was responded with confirmation that the request had been filled.

11 7.7   Plaintiff seeks injunctive relief requiring the disclose of any records relevant to

12 the public records request.

13 7.8   Plaintiff seeks daily damages for the undisclosed materials, attorney fees, and

14 costs associated with bringing this action under the PRA.

## VIII. RELIEF REQUESTED

WHEREFORE, Plaintiff prays for judgment against the defendants as follows:

8.1   For compensatory damages in an amount to be proven at trial.

8.2   For punitive damages against defendant Knight in his individual capacity in an amount to proven at trial.

8.4   For attorney fees and costs incurred pursuant to law.

8.5   For interest at the legal rate according to proof.

8.6   For injunctive relief regarding the public records act complaint.

8.7   For all such other relief as this Court may deem appropriate.

1  DATED this 10th day of February, 2022.

2  SULLIVAN LAW GROUP, PLLLC

3  _____
   Brian M. Sullivan, WSBA #38066
4  Cassidy D. Spencer, WSBA #50569
   Attorneys for Plaintiff