UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARIA GUTIERREZ,<br><br>                  Plaintiff,<br><br>     v.<br><br>CITY OF ARLINGTON, MICHAEL KNIGHT, JOSHUA FOX, JOHN DOE 1-10,<br><br>                  Defendants. | CASE NO. C22-456 MJP<br><br>ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT |

This matter comes before the Court on Plaintiff's Motion for Partial Summary Judgment. (Dkt. No. 17.) Having reviewed the Motion and all supporting materials, and noting the lack of any opposition from Defendants, the Court GRANTS the Motion.

**BACKGROUND**

In the early hours of September 30, 2019, Plaintiff Maria Gutierrez was in her SUV delivering newspapers in Arlington when Arlington Police Officers Michael Knight and Joshua Fox and an unknown Snohomish Sherrif's Deputy mistook her as a possible trespass suspect. (Declaration of Brian Sullivan Ex. 1 (Dkt. No. 18).) The Officers had been alerted by a single

1  911 call at around 4:00 AM that there were two individuals behind the fence at Mission Motors

2  "scoping the place out." (Id. at 2 (Dkt. No. 18 at 6).) After Officer Fox and the Sherrif's Deputy

3  stopped Gutierrez's vehicle that was across the street from Mission Motors, Officer Knight

4  arrived and ordered Gutierrez to exit the vehicle and walk backwards towards him with her

5  hands over her head. (Deposition of Michael Knight at 18-20, 24, 67-68 (Sullivan Decl. Ex. B).)

6  Officer Knight then ordered Gutierrez to her knees and placed her in handcuffs. (Id. at 64, 67-

7  68.) But after Officer Fox recognized Gutierrez as "a paper lady" and Knight saw newspapers in

8  the SUV, they let Gutierrez return to her vehicle and leave. (Id. at 72.)

9  Invoking 42 U.S.C. § 1983, Gutierrez brings claims against the individual officers for

10 unlawful seizure, unlawful arrest, and excessive force. She also pursues state law assault, battery,

11 and outrage claims against them. And she seeks to hold the City of Arlington liable under Monell

12 v. Department of Social Services, 436 U.S. 658 (1978). Gutierrez has filed a motion for partial

13 summary judgment, asking the Court to enter summary judgment on her claims that Defendants:

14 (1) unlawfully detained her; (2) unlawfully arrested her; and (3) used excessive force. Gutierrez

15 also seeks summary judgment on any claim of qualified immunity. None of the Defendants has

16 filed an opposition to the Motion.

**ANALYSIS**

**A.    Summary Judgment Standard**

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 248-50 (1986). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. Id. at 248. The moving party bears the initial burden of showing that there is no evidence which supports an element essential to the nonmovant's claim. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the movant has met this burden, the nonmoving party then must show that there is a genuine issue for trial. Anderson, 477 U.S. at 250. If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." Celotex, 477 U.S. at 323-24.

Rule 58(e) applies to Gutierrez's Motion given that Defendants have not opposed any of her assertions of fact. Under Rule 58(e), the court may:

(1) give an opportunity to properly support or address the fact;

(2) consider the fact undisputed for purposes of the motion;

(3) grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it; or

(4) issue any other appropriate order.

Fed. R. Civ. P. 56(e). Here, because the Defendants had notice of the Motion and filed no opposition, the Court construes the facts as undisputed. See Heinemann v. Satterberg, 731 F.3d 914, 917 (9th Cir. 2013) (noting that when a summary judgment motion is unopposed, Rule 56(e) applies).

**B.     Unlawful Seizure**

The Court finds that Gutierrez is entitled to summary judgment as to her unlawful seizure claim.

1  Under 42 U.S.C. § 1983, Gutierrez must establish (1) "depriv[ation] of a right secured by
2  the Constitution or laws of the United States" and (2) that "the alleged deprivation was
3  committed under color of state law." Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50
4  (1999). As to the second requirement, it is undisputed the defendant law enforcement officers are
5  "state actors." And as to the first step, Gutierrez asserts that Defendants conducted an unlawful
6  Terry stop because they lacked a reasonable suspicion she had engaged in criminal conduct.

7  "The Fourth Amendment permits brief investigative stops—such as the traffic stop in this
8  case—when a law enforcement officer has 'a particularized and objective basis for suspecting
9  the particular person stopped of criminal activity.'" Navarette v. California, 572 U.S. 393, 396,
10 (2014) (quoting United States v. Cortez, 449 U.S. 411, 417–418 (1981)); see Terry v. Ohio, 392
11 U.S. 1, 23-27 (1968). "Reasonable suspicion" is defined as "a particularized and objective basis
12 for suspecting the particular person stopped of criminal activity." United States v. Valdes-Vega,
13 738 F.3d 1074, 1078 (9th Cir. 2013). The "reasonable suspicion" necessary to justify such a stop
14 "is dependent upon both the content of information possessed by police and its degree of
15 reliability." Alabama v. White, 496 U.S. 325, 330 (1990). The standard takes into account "the
16 totality of the circumstances—the whole picture." Cortez, 449 U.S. at 417. "Although a mere
17 hunch does not create reasonable suspicion, the level of suspicion the standard requires is
18 considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously
19 less than is necessary for probable cause." Navarette, 572 U.S. at 398 (quotation and citation
20 omitted). An officer is permitted to draw on the officer's own "experience and specialized
21 training to make inferences from and deductions about the cumulative information available to
22 the officer that might otherwise elude an untrained person." Valdes-Vega, 738 F.3d at 1078
23 (quoting United States v. Arvizu, 534 U.S. 266, 273 (2002)). Additional information acquired
24

1 | through consensual questioning combined with an officer's knowledge and training can give rise
2 | to reasonable, articulable suspicion. See United States v. Brown, 996 F.3d 998, 1007 (9th Cir.
3 | 2021).

4 |     A reasonable suspicion can be founded on an unverified tip as long as it exhibits
5 | "sufficient indicia of reliability" to justify an investigatory stop. See Alabama v. White, 496 U.S.
6 | 325, 332 (1990). But "an anonymous tip alone seldom demonstrates the informant's basis of
7 | knowledge or veracity." Id. at 329. "That is because 'ordinary citizens generally do not provide
8 | extensive recitations of the basis of their everyday observations,' and an anonymous tipster's
9 | veracity is 'by hypothesis largely unknown, and unknowable.'" Navarette, 572 U.S. 397 (quoting
10 | White, 496 U.S. at 329). "But under appropriate circumstances, an anonymous tip can
11 | demonstrate 'sufficient indicia of reliability to provide reasonable suspicion to make [an]
12 | investigatory stop.'" Id. (quoting White, 496 U.S. at 327).

13 |     Additionally, when officers detain someone to investigate a suspected misdemeanor
14 | rather than a felony, the Court measures the legality of the stop by "consider[ing] the nature of
15 | the misdemeanor offense in question, with particular attention to the potential for ongoing or
16 | repeated danger (e.g., drunken and/or reckless driving), and any risk of escalation (e.g.,
17 | disorderly conduct, assault, domestic violence)." United States v. Grigg, 498 F.3d 1070, 1081
18 | (9th Cir. 2007). "An assessment of the 'public safety' factor should be considered within the
19 | totality of the circumstances, when balancing the privacy interests at stake against the efficacy of
20 | a Terry stop, along with the possibility that the police may have alternative means to identify the
21 | suspect or achieve the investigative purpose of the stop." Id.

22 |     The Court finds that the undisputed facts show that the Officers did not have a reasonable
23 | suspicion to conduct an investigatory stop of Gutierrez. Officers were provided with an
24 |

anonymous and unverified 911 tip that two individuals may have been trespassing on the premises of Mission Motors. (See Sullivan Decl. Ex. A.) While Officer Knight thought the individuals could have engaged in burglary, he had no articulable suspicion this was true—it was an unsubstantiated hunch. And while Knight believed he was investigating whether a crime had been committed, he admitted he had no grounds to believe that Gutierrez had committed a crime or that anything other than a trespass had been reported by an anonymous 911 caller. (Knight Dep. at 28.) The record contains no evidence to show the tip was reliable and Officer Knight made no effort to verify it. (Knight Dep. at 63.) So at the time Gutierrez was stopped, Defendants only had an unverified tip, devoid of detail, that two individuals may have trespassed—a misdemeanor. (Knight Dep. at 29-30.) Gutierrez was then found driving a car a block away from Mission Motors, and was stopped by Officer Fox and/or the Sherrif's Deputy for reasons not contained in the record. Officer Knight confirmed there was no coordination between the officers and deputy. (Knight Dep. at 26.) When Officer Knight arrived, he believed Gutierrez was leaving the area where the alleged incident occurred, but knew she was not fleeing because "there was no crime committed." (Knight Dep. at 83.) When he took over the investigation of the stopped SUV, he believed there was another individual in the SUV when he pulled in behind it. (Knight Dep. at 20.) But he did not ask the Sherrif's Deputy or Officer Fox—who were positioned on either side of the SUV—if there were two people in the SUV and he did not look to see if there were before he ordered Gutierrez out of the car. (Knight Dep. at 20.) So even if Knight believed there were two people in the SUV that could have potentially matched the unverified 911 call, he had far less intrusive means of determining if there were two individuals in the SUV before order Gutierrez out of the vehicle and conducting the lengthy Terry stop. See Grigg, 498 F.3d at 1081. Considering the facts in the totality, Knight had no reasonable suspicion to order Gutierrez out of

ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT - 6

the SUV and handcuff her, particularly since he was investigated an uncorroborated trespass purportedly involving two unidentified individuals. He instead conducted an extensive stop merely because the SUV was near Mission Motors and might have had two people in it. Even construing the facts in Defendants' favor, the Court finds no reasonable suspicion articulated to justify the Terry stop. The Court therefore GRANTS the Motion for Summary Judgment and finds that Gutierrez was unlawfully stopped in violation of the Fourth Amendment.

C.   **Unlawful Arrest**

The Court also finds that Gutierrez is entitled to summary judgment on her unlawful arrest claim.

"A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification." Dubner v. City & Cnty. of San Francisco, 266 F.3d 959, 964–65 (9th Cir. 2001); see Valezquez v. City of Long Beach, 793 F.3d 1010, 1018 (9th Cir. 2015). Once the plaintiff makes a prima facie showing she was arrested without a warrant, "the burden shifts to the defendant to provide some evidence that the arresting officers had probable cause for a warrantless arrest." Dubner, 266 F.3d at 965. "'Probable cause exists if the arresting officers had knowledge and reasonably trustworthy information of facts and circumstances sufficient to lead a prudent person to believe that [the arrestee] had committed or was committing a crime.'" Gravelet-Blondin v. Shelton, 728 F.3d 1086, 1097-98 (9th Cir. 2013) (alteration in original) (quoting Maxwell v. County of San Diego, 697 F.3d 941, 951 (9th Cir. 2012)). "To determine whether an officer had probable cause for an arrest, we examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." District of Columbia v. Wesby, ___ U.S. ___, 138 S. Ct. 577, 586 (2018)

1  (internal quotations and citations omitted). Probable cause is not a high bar and "requires only a

2  probability or substantial chance of criminal activity, not an actual showing of such activity." Id.

3       "A 'seizure' triggering the Fourth Amendment's protections occurs only when

4  government actors have, 'by means of physical force or show of authority, . . . in some way

5  restrained the liberty of a citizen.'" Graham v. Connor, 490 U.S. 386, 395 n.10 (1989)

6  (omissions in original) (quoting Terry, 392 U.S. at 19 n.16). A person's liberty is restrained

7  when, "taking into account all of the circumstances surrounding the encounter, the police

8  conduct would 'have communicated to a reasonable person that he was not at liberty to ignore

9  the police presence and go about his business.'" Florida v. Bostick, 501 U.S. 429, 437 (1991);

10 see also Dees v. Cty. of San Diego, 960 F.3d 1145, 1154 (9th Cir. 2020) (holding that seizure

11 occurs if, in view of all circumstances surrounding incident, reasonable person would have

12 believed she was not free to leave). In addition, a seizure "requires either physical force . . . or,

13 where that is absent, submission to the assertion of authority." California v. Hodari D., 499 U.S.

14 621, 626 (1991); see also United States v. McClendon, 713 F.3d 1211, 1215 (9th Cir. 2013). In

15 determining whether a reasonable person's liberty was restrained, the Ninth Circuit considers

16 five factors: "(1) the number of officers; (2) whether weapons were displayed; (3) whether the

17 encounter occurred in a public or nonpublic setting; (4) whether the officer's officious or

18 authoritative manner would imply that compliance would be compelled; and (5) whether the

19 officers advised the detainee of his right to terminate the encounter." United States v. Brown,

20 563 F.3d 410, 415 (9th Cir. 2009) (quotation omitted).

21      Gutierrez has shown that she was arrested when ordered out of her SUV, told to walk

22 backwards with her hands over her head, and kneel while being placed into handcuffs. While

23 surrounded by three law enforcement officers at 4:00 AM, Gutierrez was given no indication that

24

she was free to leave even if weapons were not displayed and no Miranda warning was given. See Brown, 563 F.3d at 415. The Court here finds that the facts are undisputed that an arrest occurred and no warrant was obtained. Given that Gutierrez has shown a warrantless arrest, Defendants must articulate the probable cause for the arrest. See Dubner, 266 F.3d at 964–65. Defendants failed to provide any responsive briefing and have failed to meet their burden. The Court also notes that there is insufficient evidence in the record—even construed in the light most favorable to Defendants—that the "arresting officers had knowledge and reasonably trustworthy information of facts and circumstances sufficient to lead a prudent person to believe that [the arrestee] had committed or was committing a crime.'" Gravelet-Blondin, 728 F.3d at 1097-98. The law enforcement officers on the scene had only one uncorroborated tip from an anonymous 911 caller that two individuals of unknown description may have trespassed at a business one block from Gutierrez's SUV. While Officer Knight thought the individuals could have attempted to engage in burglary, he had no knowledge or facts that might corroborate that hunch. And other than Officer Knight's incorrect assumption that there were two individuals in Gutierrez's car and its location near Mission Motors, there were no facts to suggest Gutierrez had been involved in the purported trespass. The Court therefore GRANTS the Motion for Summary Judgment and finds that Defendants unlawfully arrested Gutierrez in violation of the Fourth Amendment.

**D.      Excessive Force**

In general, a seizure of a person is unreasonable under the Fourth Amendment if a police officer uses excessive force in making a lawful arrest. Claims of excessive force, whether deadly or not, should be analyzed under the objective reasonableness standard of the Fourth Amendment as set forth in Lombardo v. City of St. Louis, 141 S. Ct. 2239, 2241 (2021). "The reasonableness

1    standard nearly always requires a jury to sift through disputed factual contentions, so summary
2    judgment in an excessive-force case should be granted sparingly." Est. of Aguirre v. Cnty. of
3    Riverside, 29 F.4th 624, 628 (9th Cir. 2022). The objective reasonableness of such conduct is
4    assessed by balancing the nature and quality of the intrusion on Fourth Amendment rights
5    against the government's countervailing interest in the force used. Id. As to the countervailing
6    governmental interest, "three factors inform our analysis: (1) the level of immediate threat
7    [Plaintiff] posed to the officer or others, (2) whether [Plaintiff] was 'actively resisting arrest or
8    attempting to evade arrest by flight,' and (3) 'the severity of the crime at issue.'" Id. at 629
9    (quoting Graham, 490 U.S. at 396). And although "Graham counsels that the facts that gave rise
10   to an unlawful detention or arrest can factor into the determination whether the force used to
11   make the arrest was excessive," it is not enough to simply demonstrate that the officers lacked
12   probable cause for the arrest. Velazquez, 793 F.3d at 1024.
13          The Court finds that the undisputed facts show the use of force here was objectively
14   unreasonable. First, while the Court is skeptical of Gutierrez's assertion that the use of force was
15   "extreme," the Court finds it to be substantial. Gutierrez relies on a case where the plaintiff was
16   ordered out of a car at gunpoint. (See Mot. at 12 (citing Green v. City & Cnty. of S.F., 751 F.3d
17   1039, 1049 (9th Cir. 2014)).) But Gutierrez provides no evidence that any weapons were used in
18   her detention and arrest. Nevertheless, the Court finds that the use of force was substantial given
19   an objective assessment of the facts. Three law enforcement officers surrounded Gutierrez's
20   SUV at 4:00 in the morning. Officer Knight ordered her out of her vehicle and to walk
21   backwards with her arms over her head towards him. Knight then proceeded to have her kneel
22   and handcuffed her. While the officers did not use deadly weapons, the use of force was
23   substantial and coercive. Second, the Court finds insufficient countervailing governmental
24

interests existed to warrant the use of force. There is no evidence that the officers had specific safety concerns about Gutierrez. Officer Knight specifically denied having officer safety concerns when he ordered Gutierrez to walk backwards to him, had her kneel, and then handcuffed her. (Knight Dep. at 91.) Officer Knight testified that Gutierrez complied with all of the commands, did not resist arrest, and did not display any danger to the officers. (Knight Dep. at 67-68.) Moreover, she was being investigated for a misdemeanor—a low level offense. (Knight Dep. at 29.) The need to have her walk backwards with her hands over head in front of three law enforcement officers, then kneel on the ground and be handcuffed was excessive. This use of force is also objectively unreasonable when considering the additional fact that there was no probable cause for the arrest. So while the Court is aware that summary judgment is rarely appropriate on an excessive force claim, it finds that the undisputed objective facts—construed in the light most favorable to Defendants—show that the use of force was unreasonable in light of the totality of the circumstances. The Court therefore GRANTS Summary Judgment in Gutierrez's favor on this claim.

E.      **Qualified Immunity**

The purpose of 42 U.S.C. § 1983 is "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." Bracken v. Okura, 869 F.3d 771, 776 (9th Cir. 2017) (quoting Wyatt v. Cole, 504 U.S. 158, 161 (1992)). "The doctrine of qualified immunity—though absent from the text of § 1983—'acts to safeguard government, and thereby to protect the public at large, not to benefit its agents.'" Aguirre, 29 F.4th at 627 (quoting Wyatt, 504 U.S. at 168). "As the architects of qualified immunity, courts must ensure that the doctrine remains tethered to this principle." Id. To resolve a claim of qualified immunity, the Court asks two questions: (1)

1  "whether there has been a violation of a constitutional right;" and (2) "whether that right was
2  clearly established at the time of the officer's alleged misconduct." Aguirre, 29 F.4th at 627
3  (citation and quotation omitted). The contours of the right must have been clear enough that a
4  reasonable officer would have understood that what he or she was doing violated that right.
5  Anderson v. Creighton, 483 U.S. 635, 640 (1987).

6      The Court here finds that qualified immunity should not apply. First, Defendants have
7  failed to respond to the motion for summary judgment and have not identified why they should
8  be entitled to qualified immunity. They have failed to satisfy their burden as to this defense and
9  this alone justifies entry of summary judgment in Gutierrez's favor. See Moreno v. Baca, 431
10 F.3d 633, 638 (9th Cir. 2005). Second, the Court finds that the rights here—to be free from
11 unlawful detention, unlawful arrest, and excessive force—are clearly established constitutional
12 rights and the contours of these rights sufficiently clear in the context of the facts presented that a
13 reasonable officer would know they could not have detained and arrested Gutierrez and used the
14 force they did to detain and arrest her. The Court accordingly GRANTS Summary Judgment in
15 Gutierrez's favor as to qualified immunity.

16 **CONCLUSION**

17     Gutierrez's Motion and supporting materials show that she is entitled to summary
18 judgment on her unlawful detention, unlawful arrest, and excessive force claims. And
19 Defendants are not entitled to qualified immunity. On these bases, the Court GRANTS the
20 Motion for Partial Summary Judgment. The Court notes that, at trial, Gutierrez will still need to
21 show causation and damages for all three of these claims. And nothing in this Order provides any
22 ruling on Gutierrez's assault, battery, outrage, or Monell liability claims.
23     \\
24

1   The clerk is ordered to provide copies of this order to all counsel.

2   Dated February 13, 2023.

*[signature]*

Marsha J. Pechman
United States Senior District Judge